O

# United States District Court
# Central District of California

| | |
|---|---|
| DEBORAH M. MANCHESTER, PH.D., <br><br> Plaintiff, <br><br> v. <br><br> SIVANTOS GMBH, a German company; SIVANTOS, INC., a Delaware corporation, and DOES 1-10, inclusive, <br><br> Defendants. | Case № 2:17-CV-05309-ODW (JEMx) <br><br> **ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS' MOTIONS TO DISMISS [17, 19]** |

## I.   INTRODUCTION

Deborah Manchester sued Sivantos GMBH, and Sivantos, Inc. for Defendants' alleged misappropriation of Manchester's proprietary, trade secret hearing aid technology. (Compl., ECF No. 1-1.)  She brings claims for: 1) breach of contract (only against Sivantos GMBH); 2) misappropriation of trade secrets; 3) fraudulent misrepresentation;[1] 4) unjust enrichment; 5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; and 6) breach of implied covenant of good faith and fair dealing (only against Sivantos GMBH). (*Id.*) Defendants move to dismiss independently, and on distinct grounds. (ECF Nos. 17

---

[1] The caption of Manchester's Complaint identifies a claim for fraudulent concealment, but Manchester clarifies in her Opposition that she only asserts a claim for fraudulent misrepresentation. (Opp'n 11 n. 1, ECF No. 29.)

("Sivantos Mot."), 19 ("GMBH Mot.").) After considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons below, the Court **GRANTS**, in part, and **DENIES**, in part, Defendants' respective motions.

## II.  FACTUAL BACKGROUND[2]

Manchester invented a tele-audiology technology called "HARP." (Compl. ¶ 19.) HARP allows an audiologist to access hearing aids remotely, and adjust them according to the patient's needs. (*Id.* ¶ 20.) It uses Bluetooth technology, and is the subject of three patent applications filed by Manchester. (*Id.* ¶¶ 22, 28–29.) Manchester claims this technology "opens the door to increased global hearing aid sales and affords access to a $270 billion untapped market for over-the-counter hearing aid sales." (*Id.* ¶ 25.) At all times, Manchester has diligently protected her "intellectual property and the confidentiality of information pertaining to the HARP technology." (*Id.* ¶31.)

Sivantos, Inc. is the "United States-based affiliate" of German-based Sivantos GMBH. (*Id.* ¶¶ 13–14.) Both companies have "at least an approximate 18% market share of the hearing instrument market," and are the subsidiaries of Sivantos Group. (*Id.* ¶ 14.) In May 2016, Zachary Call, Senior Business Development Consultant for Sivantos, Inc., arranged, and later attended, a meeting that included two "Sivantos team members including a technical expert," Manchester, and Dave Larsen, a business associate of Manchester. (*Id.* ¶ 32.) They met at a trade conference in Phoenix, Arizona, and the Defendants "expressed interest in a potential sale, license, or collaboration involving HARP." (*Id.*) Sivantos GMBH, Manchester, and Larsen all then entered a non-disclosure agreement ("NDA"), which did not include Sivantos, Inc. as a signatory. (*Id.* ¶ 33.) The NDA provided "that any confidential information

---

[2] All factual references are allegations taken from Manchester's Complaint and accepted as true for purposes of these Motions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

provided by Manchester would be exclusively used for the purpose of engaging in discussions concerning a potential collaboration involving [HARP], and not for any other purpose." (*Id.*) The NDA also included an arbitration provision:

> All disputes arising out of or in connection with the present Agreement, including any question regarding its existence, validity or termination, shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The seat of arbitration shall be Munich, Germany. The procedural law of this seat applicable to international arbitration proceedings shall apply where the Rules are silent. The language to be used in the arbitration proceedings shall be English.

(GMBH Mot. 3.)

In addition to the NDA, the parties, as sophisticated business professionals, understood and agreed that Manchester's confidential information could not be used for any purpose other than to vet a possible collaboration. (*Id.*)

Relying on the NDA, and understanding between all parties, Manchester presented a video demonstration of HARP, detailed the "unique and novel features of the technology," and reviewed a Power Point presentation about HARP with Defendants' representatives. (*Id.* ¶ 35.) Defendants reacted favorably, and Manchester and Larson "had numerous follow-up calls with high-level Sivantos representatives based both in the United States and in Europe (including Frank Naumann, Nicolai Fisher, Thomas Fischer, and others)…." (*Id.* ¶ 36.) The conversations continued, and Naumann and Sivantos GMBH continued to express interest in HARP. (*Id.* ¶ 37.)

On a conference call on June 16, 2016, Sivantos GMBH's representatives told Manchester that, prior to their initial meeting, "Defendants had *not* been working on developing any technology similar to HARP."[3] (*Id.* ¶ 39.) If they ever did choose to

---

[3] There is some ambiguity as to who made these representations to Manchester, as discussed further below.

pursue such a technology, "it would be in the distant future and Defendants would not do so independently." (*Id.* ¶ 40.) They would work together with other members of the hearing aid industry to develop a "group type" solution. (*Id.*) Manchester explained to Defendants the advantages of her HARP technology over a group solution, which would require an industry-wide agreement and standard. (*Id.* ¶ 41.)

After the June 16, 2016 call, Defendants continued to express interest in HARP, and on June 27, 2016, Manchester provided a document responding to "a list of technical questions about the functionality of the HARP technology" that Naumann sent to her. (*Id.* ¶ 44.) She explained how she achieved HARP's remote connection, and other technical information regarding its low-energy, Bluetooth technology, and its functionality on Apple iOS. (*Id.*) Throughout July, the parties kept talking, and "Sivantos GMBH asked Dr. Manchester to send further materials, including the claims of her pending patent application so that Sivantos GMBH could 'see what they might be investing in.'" (*Id.* ¶ 45.) Then, Sivantos GMBH's in-house lawyer sent Manchester an email requesting that she stop sending information regarding her technology, and that any further confidential information she sent would not be covered by the NDA. (*Id.* ¶ 46.) All communications then stopped.

Months later, Defendants released their own remote programing technology called, "TeleCare." (*Id.* ¶ 49.) TeleCare included the same functions as HARP, and also used "some of the exact language Dr. Manchester had used to describe HARP's features in her presentations to Defendants." (*Id.* ¶ 50.) There were other similarities between the technologies, including the same type of cloud server employed by HARP. (*Id.* ¶ 52.) The technologies were so similar that the CEO of a third-party hearing aid manufacturer contacted Manchester to congratulate her because the CEO thought that TeleCare was a licensed use of HARP. (*Id.* ¶ 53.) But it was not. As a result of Defendants' unlawful conduct, Manchester claims $50,000,000 in general, special, and consequential damages. (*Id.* at 14.)

## III. LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss under 12(b)(6) is proper where the plaintiff fails to allege a cognizable legal theory or where there is an absence of sufficient facts alleged under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Accusations of fraud require a heightened particularity in pleading. *See* Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Cafasso, ex rel. U.S. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Id.* This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Generally, a court should freely give leave to amend a complaint that has been dismissed, even if not requested by the party. *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). However, a court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. SIVANTOS, INC.'S MOTION

Sivantos, Inc. moves to dismiss because: 1) Manchester fails to state a claim against it specifically, as opposed to its parent company, Sivantos GMBH; and 2) the

California Uniform Trade Secrets Act ("CUTSA") displaces Manchester's other state law claims. (Sivantos Mot. 5–13.)

**A.    Failure to State a Claim**

       *1.    California Uniform Trade Secrets Act*

Under the CUTSA, a plaintiff must plead the ownership of a trade secret, acquisition, disclosure, or use of the trade secret by the defendant through improper means, and damages. Cal. Civ. Code § 3426.1. "A plaintiff alleging trade secret misappropriation need not 'spell out the details of the trade secret' but must identify the trade secret with sufficient particularity to give defendants 'reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery.'" *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C–08–02658, 2010 WL 2228936, at *13 (N.D. Cal. June 1, 2010) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)).

Sivantos, Inc. argues that Manchester does not adequately allege the existence of a trade secret. (Sivantos Mot. 8–9.) "However, 'one who seeks to protect his trade secrets from wrongful use or disclosure does not have to spell out the details for the trade secret to avoid a [motion to dismiss].'" *KnowledgePlex, Inc. v. Placebase, Inc.*, No. C 08-4267 JF(RS), 2008 WL 5245484, at *8 (N.D. Cal. Dec. 17, 2008) (quoting *Premiere Innovations, Inc. v. Iwas Indus., LLC*, No. 07cv1083, at *4 (S.D. Cal. Sep. 28, 2007)). Manchester alleges that she developed a novel technology that would revolutionize the hearing aid market, and "afford[] access to a $270 billion untapped market for over-the-counter hearing aid sales." (Compl. ¶¶ 22–26.) In addition to the value of the HARP technology, Manchester explains how she believes Defendants obtained her trade secrets, leading to Defendants' competing technology. (*Id.* at ¶¶ 35, 44.) Finally, she claims that she adequately protected the details of her technology, such that it constitutes a trade secret. (*Id.* ¶¶ 31, 33.) These allegations are sufficient to allege the existence of a trade secret. *See Diodes, Inc.*, 260 Cal. App. 2d at 253; *KnowledgePlex, Inc.*, 2008 WL 5245484, at *8.

Sivantos, Inc. also argues that Manchester fails to adequately allege the acquisition, disclosure, or use of the trade secret through improper means. (Sivantos Mot. 6.) Manchester responds that she disclosed confidential information to Sivantos, Inc. employee, Zachary Call, among others, and that all parties to those conversations knew or should have known that Manchester provided the information to them in confidence for the purposes of negotiating a deal, even if they did not sign the NDA. (Compl. ¶¶ 32, 34.) The CUTSA defines "misappropriation" to include "[d]isclosure or use of a trade secret of another without express or implied consent by a person who…knew or had reason to know that his or her knowledge of the trade secret was…acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use…" Cal. Civ. Code § 3426.1(b). While the allegations may not be the most detailed regarding the exact use and/or disclosure of the trade secret, Manchester alleges that Call attended the meeting, Manchester disclosed confidential information, and that all parties to the meeting "agreed and understood that Defendants could not use the information provided by Dr. Manchester for any purpose other than the Collaboration…." (Compl. ¶¶ 32–34.) As discussed further below, many of Manchester's allegations refer to "Defendants," instead of particularizing which specific defendant did what. This presents problems, especially where only Sivantos GMBH signed the NDA. But, Manchester's allegations regarding Call, a Sivantos, Inc. employee, along with allegations that "Defendants" misappropriated her information, are sufficient to state a claim against Sivantos, Inc., at this stage. *See* Cal. Civ. Code § 3426.1(b).

After this, Manchester learned that Defendants launched their own program, which mirrored her technology, used "some of the exact language Dr. Manchester had used to describe HARP's features in her presentation to Defendants," and used "the very same type of cloud server employed by HARP, in the very same manner…." (*Id.* ¶¶ 49–52.) Manchester satisfactorily alleges the use of the trade secret through improper means. *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F.

Supp. 2d 938, 944 (N.D. Cal. 2007) (quoting *Q-Co Indus., Inc. v. Hoffman*, 625 F. Supp. 608, 618 (S.D.N.Y. 1985) ("In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not what plaintiffs allege happened did in fact take place.")).

### 2. *Fraudulent Misrepresentation*

While unclear from the Complaint, Manchester makes clear in her Opposition that she asserts a claim for fraudulent misrepresentation against both Defendants, not a claim for fraudulent concealment. (Opp'n 11.) Sivantos, Inc. argues that Manchester fails to allege that "Sivantos, Inc. made any false statements, or indeed any statement at all." (Sivantos Mot. 10.) While not addressed by either defendant, allegations of fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b).

"To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Bly–Magee v. California*, 236 F. 3d 1014, 1019 (9th Cir. 2001)). "[T]here is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify *false* statements made by each and every defendant." *Id.* (emphasis in original). However, "Rule 9(b) does not allow a complaint to…lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (quoting *Cisneros v. Instant Capital Funding Grp., Inc.*, 466 F.3d 558, 607 (E.D. Cal. 2009)).

Manchester alleges that during a June 16, 2016 conference call, "Sivantos GmbH's representatives expressly and affirmatively told Dr. Manchester and Mr. Larsen that prior to meeting Dr. Manchester, Defendants had not been working on developing any technology similar to HARP." (Compl. ¶ 39.) She also claims that

1  Sivantos GMBH told her that in the event they were to pursue "a Bluetooth solution to
2  hearing aid programming, it would be in the distant future and Defendants would not
3  do so independently." (*Id.* ¶ 40.) Manchester responds that she makes allegations of
4  fraud relating to both defendants, and that, in any event, additional Sivantos, Inc.
5  representatives, who are not currently named in the Complaint, made false statements
6  to her. (Opp'n 11.) Manchester's allegations are not specific enough because she
7  lumps together both defendants and does not attribute specific statements to either
8  one. As pleaded, Manchester has not met her burden under Rule 9(b), and the Court
9  **DISMISSES** her fraudulent misrepresentation claim, with leave to amend. *Destfino*,
10 630 F.3d at 958.

   *3. Unjust Enrichment*

12 Sivantos, Inc. argues that Manchester may not recover on her claim for unjust
13 enrichment because it is a type of damages, not an independent cause of action.
14 (Sivantos Mot. 12.) "[I]n California, there is not a standalone cause of action for
15 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain*
16 *Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Durell v. Sharp*
17 *Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) and *Jogani v. Super. Ct.*, 165 Cal.
18 App. 4th 901, 912 (2008)). However, courts construe such claims as an action in
19 quasi-contract seeking restitution. *Id.* (citing and quoting *Rutherford Holdings, LLC*
20 *v. Plaza Del Rey*, 223 Cal. App. 4th 221, 230 (2014)).

21 Accordingly, the Court construes Manchester's claim as one sounding in quasi-
22 contract, and seeking restitution. *Id.* Manchester alleges that Defendants were
23 unjustly enriched by capitalizing on her HARP technology and developing their own,
24 competing product. (Compl. ¶¶ 49–52, 54.) Furthermore, Manchester may plead her
25 claims in the alternative. *Astiana*, 783 F.3d at 762–63. Thus, the Court **DENIES**
26 Sivantos, Inc.'s Motion on these grounds. *Id.* at 762 (quoting 55 Cal. Jur. 3d
27 Restitution § 2) ("[Unjust enrichment and restitution] describe the theory underlying a
28

claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'").

4. *Section 17200*

Sivantos, Inc. argues the Court should dismiss Manchester's claim under Section 17200 because it is dependent on her other claims, which were not adequately pleaded. (Mot. 13.) "By proscribing 'any unlawful' business practice, 'section 17200 'borrows' violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The "unlawful" prong is separate from the "unfair" and "fraudulent" prongs of the UCL, making unlawful conduct independently actionable even if it is not unfair or fraudulent. *Id.* Here, because Manchester adequately pleaded predicate violations, as described above, the Court will not dismiss her claim under Section 17200.

**B.  CUTSA's Preemptive Effect**

California courts have interpreted the CUTSA to have a preemptive effect on other state-law claims that rely on the same facts as a party's misappropriation of trade secrets claim.[4] *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 505 (2013). This grows from the primary purpose in adopting the CUTSA, which "was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information…of value.'" *Id.* at 506 (citing *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 (2010), *overruled on other grounds in Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 337 (2011)). The savings clause of the CUTSA, California Civil Code § 3426.7(b), provides that the CUTSA "does not affect (1) contractual remedies, whether or not based upon misappropriation

---

[4] Courts also use the terms "displace" or "supersede" to describe the preclusive effect the CUTSA has on alternate theories of liability relying on the same nucleus of operative facts. *See, e.g., Robert Half Intern., Inc. v. Ainsworth*, 68 F. Supp. 3d 1178, 1188 (S.D. Cal. 2014).

of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." "As reflected in case law decided under the California statute, the determination of whether a claim is based on trade secret misappropriation is largely factual." *Angelica Textile*, 220 Cal. App. 4th at 505 (citing cases).

Federal courts in California have taken different approaches when evaluating whether a cause of action based on disclosure of confidential information that falls short of a "trade secret" escapes the CUTSA's preemptive reach. *Compare Phoenix Tech. Ltd. v. DeviceVM*, No. C 09–04697, 2009 WL 4723400, at *5 (N.D. Cal. Dec. 8, 2009) ("Although most of the allegations in the FAC supporting Plaintiff's UCL and tort claims concern Defendants' misuse of information that appears to fall within the definition of a "trade secret" under CUTSA, the Court will construe those claims as based on those facts that are not part of the nexus that forms the basis for their CUTSA claim. If, following discovery, there is not sufficient evidence to support these claims based on a distinct nexus of facts, Defendants may move for summary judgment at that time."), *with Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) ("[T]he Court concludes that [CUTSA] supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret."). The California Supreme Court has yet to rule on this issue, and the decisions of the California Court of Appeal, while instructive, are not binding on this Court. *See Mattel, Inc.*, 782 F. Supp. 2d at 986.

At this stage, the Court must take all Manchester's factual allegations as true. *See Ashcroft*, 556 U.S. at 678. Sivantos, Inc. argues that Manchester's claims for fraudulent misrepresentation, unjust enrichment, which the Court construes as a claim in quasi-contract, and violation of Section 17200 are all based on the same nucleus of facts as her trade secrets claim. (Sivantos Mot. 16.) Manchester responds that this Court should take the approach adopted by the courts holding that claims that rely on facts falling short of a "trade secret" survive the CUTSA's preemptive effect. (Opp'n

12;) *see also First Advantage Background Serv. Corp. v. Private eyes, Inc.*, 569 F. Supp. 2d 929, 942 (N.D. Cal. 2009) ("Private Eyes may continue to pursue the claim for false promise, so long as the confidential information at the foundation of the claim is not a trade secret, as that term is defined in CUTSA. If, in subsequent pleadings or briefs, or at trial, it is established that the disclosures on which Private Eyes bases this claim were trade secrets, the claim will be dismissed with prejudice."). The Court adopts the approach in *First Advantage Background*, and **DENIES** Sivantos, Inc.'s Motion on these grounds. To the extent that through discovery it becomes clear that the facts supporting her alternate theories, are actually the same as those supporting her misappropriation claim, the Court will dismiss them at trial, or on summary judgment.

## C. Manchester May Amend

A court should freely give leave to amend a complaint that has been dismissed, even if not requested by the party. *See* Fed. R. Civ. P. 15(a); *Lopez,* 203 F.3d at 1130. Here, the Court grants Manchester leave to amend because she may be able to meet the requirements of Rule 9(b).

## V. SIVANTOS GMBH'S MOTION

Sivantos GMBH moves to dismiss on the grounds that: 1) Manchester did not properly serve Sivantos GMBH; and 2) this is not a proper forum for this litigation under the doctrine of forum non conveniens.[5]

---

[5] Sivantos GMBH initially moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(3), on the grounds that the Central District is an improper venue for this action. (GMBH Mot. 5, ECF No. 19.) However, as Manchester points out, the Supreme Court held that a motion to dismiss for improper venue is not appropriate where a party simply seeks to enforce a forum-selection clause. *Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013) ("Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause."). However inartfully argued initially, Sivantos GMBH pivoted in reply and contends it actually seeks dismissal under the doctrine of forum non conveniens. (Reply 5–9, ECF No. 31.) Manchester did not have an opportunity to respond to these arguments. And, because the Court finds service improper, it does not address the doctrine of forum non conveniens at this time.

Foreign corporations can be served through the Hague Convention so long as their country of incorporation is a signatory to the treaty. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). Parties may also be served in this district, pursuant to California state law. Fed. R. Civ. P. 4(h)(1)(A). Manchester maintains she properly served Sivantos GMBH through its "general manager" in the United States, Sivantos, Inc., pursuant to California law. (Opp'n 19.)

In *Yamaha Motor Co. v. Superior Court*, the California Court of Appeal held that a plaintiff effected service on a foreign company by serving its United States subsidiary. 174 Cal. App. 4th 264, 274 (2009) (citing *Cosper v. Smith & Wesson Arms Co.*, 53 Cal.2d 77, 83 (1959)). There, service on Yamaha's United States-based subsidiary was sufficient because: 1) it was the "American face of the Japanese company;" 2) the subsidiary had an "exclusive arrangement to sell the manufacturer's products;" 3) it provided warranty service, English owner manuals, did testing, marketing, and received complaints about the Japanese manufacturer's products. *Id.* These facts, along with a confidence that the Japanese parent would be apprised of the suit, led the court to find service of process was "good enough." *Id.*

No doubt, there are similarities between *Yamaha* and the facts presented here. However, Manchester does not set forth evidence of the defendants' relationship that would allow the Court to adequately evaluate "the frequency and quality of contact between the parent and the subsidiary [and] the benefits in California that the parent derives from the subsidiary…." *U.S. ex. rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947, 949 (9th Cir. 2016) (unpublished) (remanding to district court to consider nature of relationship between parent and subsidiary). Manchester did not directly serve Sivantos GMBH, but Sivantos GMBH clearly knows of this action, as it appeared and asserts several defenses by way of this Motion. So, the concern that Sivantos GMBH is not aware of the action is nonexistent. Without providing any substantiating evidence, Sivantos GMBH argues that, unlike in *Yamaha*, Sivantos, Inc. is *not* the exclusive distributor of its products in the United States, taking away from a

13

finding that Sivantos, Inc. is its "general manager." (Reply 11.) On the other hand, Manchester's only evidence of the corporate defendants' relationship is screen shots from each's website explaining that "Sivantos, Inc. is part of the The Sivantos Group and operates in North America," among other generalized statements. (Handler Decl. ¶ 5, Ex. C, ECF No. 29-4.) Manchester does not request that the Court take judicial notice of these documents, and even if she did, the Court could not accept the facts within the documents as true where they are contested. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001).

Manchester argues that a signed return of service is prima facie evidence of service that Sivantos GMBH must rebut with strong and convincing evidence. (Opp'n 18 (citing *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007).) The issue here, however, is not whether Sivantos, Inc.'s agent was actually served; it is whether Sivantos, Inc. is a "general manager" such that service on it constituted service on Sivantos GMBH under California law. *See Yamaha Motor Co.*, 174 Cal. App. 4th at 275–76. Neither party submits competent evidence that would allow the Court to find that Sivantos, Inc. acts as Sivantos GMBH's "general manager" in California. Thus, Manchester has not met her burden to show she properly served Sivantos GMBH.

Several factors discussed above lead the Court to believe that, provided the opportunity, Manchester could likely establish that Sivantos, Inc. is Sivantos GMBH's "general manager" for purposes of service under California law. Accordingly, the Court **GRANTS** Sivantos GMBH's Motion, but provides Manchester leave to conduct jurisdictional discovery on the relationship between Sivantos, Inc. and Sivantos GMBH. *Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008) ("[W]here a plaintiff can demonstrate the existence of a plausible factual disagreement or ambiguity, our jurisprudence favors permitting the litigants the opportunity to flesh out the record."). To the extent Manchester would prefer to serve Sivantos GMBH through the Hague Convention, she may. In any event, Manchester has 60 days from

the date of this Order to: 1) serve Sivantos GMBH directly via the Hague Convention; or 2) conduct jurisdictional discovery and file a declaration and supporting evidence establishing Sivantos, Inc. satisfies California's "general manager" test. To the extent Sivantos GMBH still contests service, it may file another Motion.

Given the impropriety of service discussed above, the Court declines to address Sivantos GMBH's other arguments at this time. If Sivantos GMBH challenges service again, under the parameters set forth above, it may also move to dismiss on the grounds set forth in its Reply, which will afford Manchester an opportunity to respond to its forum non conveniens arguments.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS**, in part, Sivantos, Inc.'s Motion to Dismiss, with leave to amend, and **GRANTS** Sivantos GMBH's Motion, as described above. To the extent Manchester wishes to amend her Complaint, she must do so within 60 days of the date of this Order, in conjunction with her declaration regarding service of Sivantos GMBH. Manchester also must submit a redlined copy of her amended Complaint.

**IT IS SO ORDERED.**

January 29, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**