# United States District Court
# Central District of California

| | |
|---|---|
| DEBORAH M. MANCHESTER, PH.D., <br><br>Plaintiff, <br><br>v. <br><br>SIVANTOS GMBH, a German company; SIVANTOS, INC., a Delaware corporation, AURALCARE HEARING CENTERS OF AMERICA; DAVID D. LARSEN, and DOES 1-10, inclusive, <br><br>Defendants. | Case №: 2:17-CV-05309-ODW (JEMx) <br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [438, 446]** |

## I.  INTRODUCTION

Presently before the Court are Motions for Summary Judgment filed by Defendants AuralCare Hearing Centers of America's ("AuralCare") and David Larsen (AuralCare Motion For Summary Judgment, ("AuralCare Mot."), ECF No. 438), as well as Sivantos, Inc. and Sivantos GMBH. (Sivantos Motion for Summary Judgment ("Sivantos Mot."), ECF No. 446.)  For the reasons that follow, the Motions are **GRANTED.**[1]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. FACTUAL BACKGROUND

Deborah M. Manchester, Ph.D., invented a tele-audiology technology called "HARP." (Second Amended Compl. ("SAC") ¶ 21, ECF No. 66.)

HARP allows an audiologist to access hearing aids remotely and adjust them according to the patient's needs. (*Id.* ¶ 22.) It uses Bluetooth technology and is the subject of three patent applications filed by Manchester. (*Id.* ¶¶ 24, 29–31.) Manchester claims this technology "opens the door to increased global hearing aid sales and affords access to a $270 billion untapped market for over-the-counter hearing aid sales." (*Id.* ¶ 27.) At all times, Manchester maintains she has diligently protected her "intellectual property and the confidentiality of information pertaining to the HARP technology." (*Id.* ¶ 33.)

Sivantos, Inc. is the "United States-based affiliate" of German-based Sivantos GMBH. (*Id.* ¶ 13.) Both companies have "at least an approximate 18% market share of the hearing instrument market" and are the subsidiaries of Sivantos Group. (*Id.* ¶ 14.) In May 2016, Zachary Call, Senior Business Development Consultant for Sivantos, Inc., arranged, and later attended, a meeting that included two "Sivantos team members including a technical expert," Manchester and Dave Larsen (a business associate of Manchester). (*Id.* ¶ 44.) They met at a trade conference in Phoenix, Arizona, and according to Manchester, Defendants "expressed interest in a potential sale, license, or collaboration involving HARP." (*Id.*) Sivantos GMBH, Harp, Inc., through Manchester, and Larsen all then entered a non-disclosure agreement, which did not include Sivantos, Inc. as a signatory. (*Id.* ¶ 45.)

During a conference call on June 16, 2016, Sivantos GMBH's representatives told Manchester that, prior to their initial meeting, "Defendants had *not* been working on developing any technology similar to HARP." (*Id.* ¶ 51.) If Sivantos GMBH ever did choose to pursue such a technology, "it would be in the distant future and Defendants would not do so independently." (*Id.* ¶ 52.) Sivantos GMBH would work together with other members of the hearing aid industry to develop a "group type"

solution. (*Id.*) Manchester explained to Defendants the advantages of her HARP technology over a group solution, which would require an industry-wide agreement and standard. (*Id.*)

After the June 16, 2016 call, Defendants continued to express interest in HARP, and on June 27, 2016, Manchester provided a document responding to "a list of technical questions about the functionality of the HARP technology" that Naumann sent to her. (*Id.* ¶ 56.) She explained how she achieved HARP's remote connection and other technical information regarding its low-energy, Bluetooth technology, and its functionality on Apple iOS. (*Id.*) Throughout July 2016, the parties continued their communications, and "Sivantos GMBH asked Dr. Manchester to send further materials, including the claims of her pending patent application so that Sivantos GMBH could 'see what they might be investing in.'" (*Id.* ¶ 57.) Then, prior to Manchester submitting patent-related information, Sivantos GMBH's in-house lawyer sent Manchester an email requesting that she stop sending information regarding her technology, and that any further confidential information she sent would not be covered by the NDA. (*Id.* ¶ 58.) As a result, all communications ended. (*Id.* ¶ 59.)

Months later, Defendants released their own remote programing technology called, "TeleCare." (*Id.* ¶ 61.) According to Manchester, TeleCare used "some of the exact language [she] had used to describe HARP's features in her presentations to Defendants." (*Id.* ¶ 62.) Manchester claims $50,000,000 in general, special, and consequential damages. (*Id.* ¶ 78.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine"

where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though a court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the

'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

### IV. SIVANTOS, INC. AND SIVANTOS GMBH'S MOTION

Sivantos, Inc. and Sivantos GMBH move for summary judgment because: 1) Manchester lacks standing to bring her claims; 2) Manchester cannot prove trade secret misappropriation because she lacks a protectable interest; 3) Manchester cannot prove Sivantos Inc. misappropriated the alleged trade secrets; 4) Manchester's contractual claims fail as a matter of law because she cannot prove causation or harm; and 5) Manchester admits she did not disclose any confidential information to Sivantos, Inc., and Sivantos Inc. is not a party to any nondisclosure agreement ("NDA"). (Sivantos Mot. 1–3, ECF No. 448-1.)

**A.  Standing**

Sivantos argues that Manchester lacks standing to enforce contractual claims because she was neither a party to a NDA with Sivantos GMBH nor designated as a non-party beneficiary. (Sivantos Mot. 7.)

As a general matter, a person who is not a party to a contract does not have standing either to seek its enforcement or to bring claims based on the contractual relationship. *Ruegsegger v. Caliber Home Loans, Inc.*, No. SA CV 17-0907-DOC (KESx), 2018 WL 5993857, at *14 (C.D. Cal. Apr. 30, 2018) (quoting *Mega Life & Health Ins. Co. v. Superior Court*, 172 Cal. App. 4th 1522, 1528–32 (2009)).

California law provides that a third party may enforce a contract when the contract was made expressly for the benefit of the third party. Cal. Civ. Code § 1559; *see Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002). A "'third party's rights under a contract are predicated upon the contracting parties' intent to benefit it.'" *Hess*, 27 Cal. 4th at 524 (quoting *Garcia v. Truck Ins. Exch.*, 36 Cal. 3d 426, 436 (1984)). "Ascertaining this intent is a question of ordinary contract interpretation." *Id.* "Under long-standing contract law, a 'contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same

is ascertainable and lawful.'" *Iqbal v. Ziadeh*, 10 Cal. App. 5th 1, 7 (2017) (quoting Cal. Civ. Code § 1636). California recognizes the objective theory of contracts which "[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Berman v. Bromberg*, 56 Cal. App. 4th 936, 948 (1997) (quoting *Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.*, 164 Cal. App. 3d 1122, 1127 (1985)). The parties' "undisclosed intent or understanding is irrelevant to contract interpretation." *Iqbal*, 10 Cal. App. 5th at 8 (collecting cases).

Here, Sivantos maintains that the text of the NDA includes the names and signatures of all parties to the NDA, but Manchester is not among them. (Sivantos Mot. at 7.) However, a review of the NDA reveals that Manchester is listed in the preamble and on the signature page, albeit immediately after HARP, Inc. (Multiparty Non-Disclosure and Restricted Use Agreement ("NDA") 2, 10, ECF No. 448-5.) Thus, the Court concludes that there is insufficient evidence to determine that Manchester is not a party to the contract. Even if she were not, however, the NDA is clear that it was the intention of the parties to engage in discussions regarding a potential collaboration, and the only individual able to authorize such collaboration is Manchester. Thus, whether the Court analyzes the text or the parties' intent, Manchester has standing.

**B.     Breach of Contract[2]**

As an initial matter, the Court notes that Manchester only maintains a breach of contract cause of action against Sivantos GMBH, and not Sivantos, Inc. (SAC ¶¶ 72–79.)

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

---

[2] The Court notes that Plaintiff alternates between the use of German and California law; specifically she maintains her failure to mark documents as confidential does not impact her contractual obligations under German law, but subsequently raises a claim of breach of good faith and fair dealing, which is inherent in every California contract, but offers no support that such a requirement exists under German law. Given that Manchester did not rely upon German law in her Complaint, and choice of law was not argued by either party, the Court will apply California law to all contract claims.

defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (internal citations omitted).

Here, neither party presents argument regarding whether a contract was formed. Manchester maintains that Sivantos GMBH breached the NDA because it "has misused, and continues to misuse, the confidential and proprietary information provided thereunder for its own business purposes, to develop, market, and sell its own TeleCare application . . . ." (SAC ¶ 75.)

The NDA begins by establishing definitions, notably, of what constitutes confidential information. (NDA 1.) In essence, confidential information is defined as any information and data, which is marked as confidential. (*Id.*) Sivantos argues that Manchester never marked any information confidential. (Sivantos Mot. 9.) Manchester does not argue against this fact in her Opposition. Instead, she maintains, through her German law expert, that the lack of confidential markings does not run afoul of the NDA's express requirement that all confidential material be marked as such. (Manchester Opp'n 4–5, ECF No. 569.) Given that Manchester does not dispute the fact she never marked information and data submitted to Sivantos GMBH as confidential, and no evidence exists that she submitted confidential information to Sivantos GMBH, the foundation she builds her argument upon is untenable, and she thus fails to generate a triable issue of material fact on breach.

Accordingly, the Court grants summary judgment on this claim.

C. **Trade Secret Misappropriation**

To obtain protection under the California Uniform Trade Secrets Act ("CUTSA"), a plaintiff must first prove: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *CytoDyn of New Mexico, Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008) (quoting *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003)).

Under CUTSA, a trade secret is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). To qualify as a trade secret, the information "must be secret, and must not be of public knowledge or of a general knowledge in the trade or business." *DVD Copy Control Ass'n, Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (internal quotation marks omitted) (2004).

Courts have consistently denied the existence of a trade secret where, as here, the claimed trade secret is submitted without redaction for registration with the United States Copyright Office. *See KEMA, Inc. v. Koperwhats*, 658 F. Supp. 2d 1022, 1031 (N.D. Cal. 2009) (holding that defendant's counter-claim for trade secret misappropriation failed where defendant failed to allege that his submission was redacted); *Mobile Active Defense, Inc. v. Los Angeles Unified Sch. Dist.*, No. 15-08762 RGK (GJSx), 2015 WL 12860491, at *5 (C.D. Cal. 2015) (denying a preliminary injunction pursuant to the CUTSA on the same grounds).

In order to obtain registration, an applicant must submit one or two complete copies of the work to the Copyright Office. *See* 17 U.S.C. § 408(b); 37 C.F.R. § 202.20(c). Accordingly, Plaintiff must have submitted her claimed trade secrets to the Copyright Office, which submission was publicly accessible. Although the Copyright Office does place restrictions on requests for reproductions, 37 C.F.R. § 201.2(d)(2), the same restrictions do not apply to requests for inspection. *Compare* 17 U.S.C. § 705(b) ("[A]rticles deposited in connection with completed copyright registrations and retained under the control of the Copyright Office, shall be open to public inspection.")

*with* 37 C.F.R. § 201.2(b)(1) (providing for public inspection at the Copyright Office of material deposited in connection with a completed copyright registration).

Here, Manchester never addresses the unredacted nature of her submission, arguing instead that *KEMA* was wrongly decided, and the mere act of submission is insufficient to eliminate secrecy. (Manchester Mot. 5-6.) This strained argument does not defeat the conclusions reached by courts in this Circuit facing the same claim. Thus, the Court accepts Sivantos' unredacted submission argument as undisputed, thereby eliminating the existence of a trade secret.

Given that trade secret possession is a necessary prerequisite to obtain protection under CUTSA and sustain a trade secret misappropriation claim, the Court need not analyze remaining elements, and grants summary judgment in Sivantos' favor as to this cause of action.

### C. Fraudulent Misrepresentation

To establish a claim for fraudulent misrepresentation, the plaintiff must prove:
> (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff.

*Perlas v. GMAC Mortgage, LLC*, 187 Cal. App. 4th 429, 434, (2010) (italics omitted).

Here, Manchester argues that during a June 2016 conference call, she was told that Sivantos was not working on a similar product, as cdthey would not be utilizing Bluetooth technology. (SAC ¶¶ 51–52.) Moreover, it is undisputed that the product that Sivantos released after the conference call did not possess Bluetooth. (Manchester Statement of Genuine Issues of Material Fact ("Manchester SUF")

12, ECF No. 570.) Thus, given that the statement is undisputed, and the corresponding product lacks Bluetooth technology, Manchester cannot generate a triable issue of material fact as to fraudulent misrepresentation.

Accordingly, Sivantos is entitled to summary judgment as to this claim.

## D. Unjust Enrichment

Manchester also brings a claim for unjust enrichment under California law. (SAC ¶¶ 95–98.) However, "California does not recognize a standalone cause of action for unjust enrichment." *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 978 (N.D. Cal. 2010) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010)). "Unjust enrichment is not a cause of action, however, or even a remedy, but rather, a general principle, underlying various legal doctrines and remedies." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004). Thus, this claim cannot survive summary judgment.

Accordingly, the Court grants summary judgment as to this cause of action.

## E. California Business and Professions Code Section 17200

Manchester also brings a claim under California's Unfair Competition Law ("UCL") pursuant to California Business and Professions Code section 17200, *et seq.* (SAC ¶¶ 95–98.)

Regarding claims of unlawful business practices, "[v]irtually any law[,] federal, state[,] or local can serve as a predicate for an action" under section 17200. *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700. 702 (2001). "If a plaintiff cannot state a claim under the predicate law, however, [the] Section 17200 claim also fails." *Rudd v. Borders, Inc.*, No. 09-cv-832, 2009 WL 4282013, at *2 (S.D. Cal. Nov. 25, 2009).

Given that the Court has granted summary judgment on all causes of action heretofore, Manchester's claim fails as a matter of law because she lacks a predicate to sustain a claim under California Business and Professions Code section 17200.

Accordingly, the Court grants summary judgment as to this cause of action.

## F. Implied Covenant of Good Faith and Fair Dealing

"The covenant of good faith and fair dealing is implied in every contract and prevent[s] one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement." *Canas v. Ocwen Loan Servicing LLC*, No. SACV 15-1100 JVS (JCGx), 2015 WL 5601838, at *5 (C.D. Cal. Sept. 21, 2015) (quoting *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000)).

Courts have generally rejected breach of the implied covenant claims when they are merely duplicative of a breach of contract claim. *See, e.g.*, *Davis v. Chase Bank U.S.A., N.A.*, No. CV 06-04804 DDP (PJWx), 2013 WL 169868, at *6 (C.D. Cal. Jan. 16, 2013); *Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1066 (C.D. Cal. 2005); *see also Creager v. Yoshimoto*, No. C 05-01985 JSW, 2007 WL 2938168, at *2–3 (N.D. Cal. Oct. 9, 2007).

In reviewing the NDA, the parties' obligations are expressly set forth and are accordingly quite clear: all data that was marked as confidential should be kept as such. Thus, the NDA leaves little room for implied covenants, which "are justified only when they are not inconsistent with some express term of the contract and, in the absence of such implied terms, the contract could not be effectively performed." *Tanner v. Title Ins. & Trust Co.*, 20 Cal. 2d 814, 824 (1942).

Moreover, the crux of Manchester's good faith and fair dealing claim alleges that Sivantos misused Manchester's information "for its own purposes and/or disclosing the information to third parties, and deprived Dr. Manchester of the benefit of the NDA." (SAC ¶ 107.) This claim is merely a restatement of the breach of contract claim and is therefore duplicative.

Accordingly, given the duplicative nature of this claim, and that "[i]mplied terms should never be read to vary express terms," the Court grants Sivantos' motion for summary judgment with respect to this claim. *Carma Developers v. Marathon Dev.*, 2 Cal. 4th 342, 374 (1992).

As the Court has found that Manchester has not generated a triable issue of material fact on any of her claims, Sivantos Inc. and Sivantos GMBH's Motion for Summary Judgment is **GRANTED**.

## V. AURALCARE AND LARSEN'S MOTION

Auralcare and Larsen joined Sivantos Inc. and Sivantos GMBH's Motion for Summary Judgment (AuralCare Joinder, ECF No. 496.), and also independently moved for Summary Judgment. (AuralCare Motion for Summary Judgment ("AuralCare Mot."), ECF No. 438), AuralCare moves on the following grounds: 1) Manchester's breach of contract claim fails for lack of standing and because it violates California law; 2) Manchester failed to present sufficient evidence that AuralCare aided and abetted Sivantos in its alleged misappropriation, and that Manchester's unjust enrichment and UCL claims are derivative and therefore fail. (AuralCare Mot. 9.)

Given that AuralCare and Larsen joined in the Sivantos' Motion for Summary Judgment, the Court need only address Manchester's breach of contract cause of action, as her misappropriation, unjust enrichment, and unfair competition claims fail as a matter of law against AuralCare and Larsen for the same reasons they failed against both Sivantos entities.

### A. Breach of Contract

In Fall 2015, Manchester, an independent contractor who worked in AuralCare facilities,[3] approached Larsen about her invention, and subsequently entered into a Non-Disclosure and Non-Compete agreement. (Non-Compete and Non-Disclosure Agreement ("the Agreement"), ECF No. 43-4.)

The Agreement begins by confirming an agreement between My Hearing Centers, Larsen, Bacher (collectively, "The MHC Team"), and Manchester, Manchester Hearing Services, Inc. ("The Company"). (*Id.*) The Agreement also limited AuralCare from engaging in the following actions without consent from Manchester, for a term of three years:

---

[3] It is undisputed that Manchester worked in AuralCare facilities until at least May 2018.

a) [E]ngage or assist any other person or entity to engage in any business competitive with or substantially similar to the business of the Company or any of the Company's licensees in any geographic area where the Company and/or licensees are transacting business;

b) [S]olicit, cater to or serve or seek to solicit, cater to or serve any customer of the Company or its licensees with services and/or products which are the same as, or which are substantially similar to or competitive with, the Business of the Company or its licensees;

c) [D]ivert or attempt to divert, for its direct or indirect benefit or for the benefit of any other person, any customer of the Company or licensees or any of the business or patronage of any customer of the Company or licensees;

d) [I]nfluence or attempt to influence any customer of the Company or licensees to transfer its business or patronage from the Company or licensees directly or indirectly to any other person, corporation, partnership, joint venture, sole proprietorship or other form of business entity;

e) [A]ssist, be or become involved in or associated with, in any capacity, any person, corporation, partnership, joint venture, sole proprietorship or other form of business entity that Is engaged in the production, creation or authorship of products which are the same as, or which are substantially similar to or competitive with, the Business of the Company licensees, in any geographic area where the Company and/or licensees are transacting business; and

f) [I]n any other manner interfere with, disrupt[,] or attempt to disrupt the relationship of the Company and licensees with any of the customers, suppliers, or employees of the company, including the solicitation of any of the foregoing.

g) [F]or purposes of clarity, and notwithstanding any of the foregoing or elsewhere in this agreement, the MHC Team may engage in business with the Company's licensees and Company's customers so long as not directly or indirectly competitive with the Business of the Company, i.e. HARP, or any products with HARP.

(*Id.* ¶ 1.1, (a)–(g).)

AuralCare raises the same standing argument raised by Sivantos—that Manchester lacks standing, and it thus fails for the same reason—Manchester was listed by name in the preamble, and signed the document herself. (*Id*. at 2, 5.) AuralCare's argument appears to ignore the preamble, which sets forth the agreement between the aforementioned parties. Consistent with the Court's previous conclusion, Manchester also has standing to challenge the Agreement. The Court turns to whether the Agreement violates California law.

California has a settled public policy in favor of open competition. *Hill Medical Corp. v. Wycoff*, 86 Cal. App. 4th 895, 900 (2001). Accordingly, the general rule is that covenants not to compete are void. *Id.* at 901. Section 16600 embodies this prohibition against restraints on trade as follows:

Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.

Generally, California Business Professions Code sections 16601 and 16602 permit broad covenants not to compete in two narrow situations, i.e., where a person sells the goodwill of a business and where a partner agrees not to compete in anticipation of dissolution of a partnership. *Kolani v. Gluska*, 64 Cal. App. 4th 402, 407 (1998). Thus, covenants not to compete in contracts *other than* for either the sale of goodwill or dissolution of a partnership are void. *Id*. Moreover, when a contract creates an illegal restraint on trade, there is nothing that the parties can do that will in any way add to its

validity. If the contract is void, it cannot be ratified either by right or by conduct. *South Bay Radiology Medical Associates v. Asher* 220 Cal. App. 3d 1074, 1080 (1990).

Manchester argues that the Agreement is enforceable because Courts have excepted agreements that protect trade secrets, relying on *Latona v. Aetna Healthcare, Inc.*, 82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999). While *Latona* does indeed stand for the proposition that an NDA seeking to protect trade secrets constitutes an exception to the rule articulated herein, the Court in *Latona* concluded that the exception did not apply because the restrictions in the NDA were neither narrowly tailored nor limited to protecting trade secrets. *Id.* at 1096–97. Here, the NDA's broad terms limit AuralCare from engaging in business competitive with Manchester in any geographic area, as well as prohibiting association with any person that is engaged in production of products similar to Manchester's product. Thus, Manchester's assertion that the purpose of the Agreement was to protect trade secrets is unavailing, as the express prohibitions far exceed what is necessary to protect a trade secret, and as such, is neither narrowly tailored nor limited to trade secret protection.

Accordingly, the Agreement violates California law, and AuralCare and Larsen are entitled to summary judgment on all claims.

## VI. CONCLUSION

For the foregoing reasons, Sivantos and AuralCare's Motions for Summary Judgment are **GRANTED**. (ECF Nos. 438, 446.) The parties shall submit proposed Judgment within one week of the issuance of this order.

**IT IS SO ORDERED.**

August 2, 2019

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**