O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH M. MANCHESTER, PH.D., <br><br> Plaintiff, <br><br> vs. <br><br> SIVANTOS GMBH, a German company; SIVANTOS, INC., a Delaware corporation; AURALCARE HEARING CENTERS OF AMERICA, LLC d/b/a MY HEARING CENTERS, a Utah Limited Liability Company; DAVID D. LARSEN, an individual; RYAN K. BACHER, an individual; and DOES 1-10, inclusive, <br><br> Defendants. | No. 2:17-cv-05309-ODW (JEMx) <br><br> Hon. Otis D. Wright II <br><br> **ORDER GRANTING MOTION TO STRIKE COUNTERCOMPLAINT [118]** |
| AURALCARE HEARING CENTERS OF AMERICA, LLC d/b/a MY HEARING CENTERS, a Utah Limited Liability Company, <br><br> Counterclaimant, <br><br> vs. <br><br> DEBORAH M. MANCHESTER, PH.D., And DOES 1-10, inclusive, <br><br> Counterdefendants. | |

## I. INTRODUCTION

Presently before the Court is Counterdefendant Deborah M. Manchester, Ph.D's ("Manchester") Motion to Strike Counterclaimant Auralcare Hearing Centers of America's ("Auralcare") Countercomplaint pursuant to California Code of Civil Procedure section 425.16. (Mot. to Strike ("MTS") 7, ECF No. 118.) For the following reasons, Manchester's Motion to Strike is **GRANTED**.[1]

## II. FACTUAL BACKGROUND

The Court set forth the extensive background in this case in its recently issued Order granting Summary Judgment, and incorporates that discussion by reference herein. (Order, ECF No. 647.) The facts relevant to the instant motion are as follows. Manchester met Mr. Larsen, the owner of Auralcare in 2013, while she was working part time at a clinic called SoCal Hearing and Balance, located in Torrance, California. (MTS 2.) Mr. Larsen sought to purchase the clinic, and reached a deal with Dr. Jonathan Leiterman, to accomplish his goal. (*Id.*) It was in the purchase context that Manchester signed an agreement with Auralcare to serve as "Director of Hearing Services at [Auralcare's] clinic in Torrance, CA." (*Id*.) Manchester's duties included all facets of managing and operating a hearing clinic, and included testing and fitting of potential patients, as well as sales, attending educational seminars, and providing services and recordkeeping. (Agreement 1, ECF No. 107, Ex 1.) Larsen never signed the agreement. (Manchester Declaration in Support of MTS ("Manchester Decl.") ¶4, ECF No. 121.) Ultimately, the sale fell through. (Manchester Decl. ¶ 5.) Manchester, however, continued to work at Auralcare facilities for four years after signing the independent contractor agreement. (Larsen Declaration in Support of Auralcare Opposition ("Larsen Decl.") ¶¶ 10, Ex. 1-2, ECF No. 209-2.)

After Manchester left the Torrance clinic, she and Larsen continued a professional relationship under which Manchester saw Auralcare patients at her own

---

[1] After considering the papers filed in connection with this Motion, the Court deemed this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

1

clinic in Lancaster, California.  (Manchester Decl. ¶¶ 10-11.)

In 2015, Manchester approached Larsen and Auralcare to solicit an investment in her invention, HARP, but MHC declined to do so. (*Id.* ¶¶ 11-12.)  Larsen subsequently introduced Manchester to other potential investors, including Sivantos GMBH/Sivantos, Inc. (*Id.* ¶ 12.)

Manchester brought suit against Sivantos GMBH, and Sivantos, Inc. on May 24, 2017 (*See* Notice of Removal, Ex 1., ECF No. 1.) arguing trade secret misappropriation and other contract-related claims.  She subsequently added Auralcare and Larsen eleven months later after, filing her Second Amended Complaint. (*See generally* SAC, ECF No. 66).

Auralcare filed its countercomplaint on June 14, 2018, (Counterclaim, ECF No. 107.), and Manchester filed the instant anti-SLAPP Motion on July 9, 2018. (MTS.)

### III. LEGAL STANDARD

California's anti-SLAPP (Strategic Lawsuit against Public Participation) statute allows defendants to make a special motion to strike a claim if that claim arises from an act by the defendants to further their right of petition or free speech in connection with a public issue.  Cal. Civ. Proc. Code § 425.16(b)(1); *see also Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (concluding that the twin aims of the *Erie* doctrine "favor application of California's anti-SLAPP statute in federal cases").  An act qualifies for protection under this statute if it falls within one of four categories:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law[;] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law[;] (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest[;] or (4) any conduct in furtherance of the exercise of the constitutional

>right of petition or the constitutional right of free speech in
>connection with a public issue or an issue of public interest.

Cal. Civ. Proc. § 425.16(e).

Analyzing an anti-SLAPP motion involves a two-step process. First, a court determines whether the defendants have made a prima facie showing that the plaintiff's claims arise from an act protected under the statute. *Ingles v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1061 (2005). To make this determination, a court should look to any pleadings or affidavits that state facts supporting or refuting the parties' theories of liability or defense regarding the claim. *Martinez v. Metabolife Int'l Inc.*, 113 Cal. App. 4th 181, 186 (2003). In the first prong, courts do not consider the legitimacy of the plaintiff's claims. *Coretronic Corp. v. Cozen O'Connor*, 192 Cal. App. 4th 1381, 1388 (2011).

If the defendant makes the required prima facie showing, the burden shifts to the plaintiff to demonstrate "a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). The plaintiff must provide admissible evidence to establish that "the complaint is legally sufficient and supported by a prima facie showing of facts [that] sustain a favorable judgment." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001). If the plaintiff fails to make this showing by a preponderance of the evidence, a court must grant the motion to strike and award the prevailing defendant attorneys' fees and costs. Cal. Civ. Proc. Code § 425.16(c)(1); *Ingles*, 129 Cal. App. 4th at 1061–62.

## IV. DISCUSSION

### A. MANCHESTER'S SPEECH IS PROPERLY WITHIN ANTI-SLAPP'S AMBIT

The anti-SLAPP statute protects "any written or oral statement before a legislative, executive, or judicial proceeding, or any other proceeding authorized by law." Cal. Civ. Proc. Code § 425.16(e)(2).

Auralcare maintains Manchester's conduct runs afoul of the first prong, but it is clear Manchester's act is in furtherance of her constitutional right to petition. *See* Cal. Civ. Proc. Code § 425.16(a). Specifically, Manchester's act of filing her Second

Amended Complaint fits firmly within the anti-SLAPP statute's first category of protected acts because the Second Amended Complaint is a writing made before a judicial proceeding. Cal. Civ. Proc. Code § 425.16(e)(1).

Given that Manchester's Second Amended Complaint is a valid attempt to petition the Court, the burden now shifts to Auralcare to demonstrate the legal sufficiency of its counterclaims.

### B. AURALCARE HAS NOT DEMONSTRATED A PROBABILITY OF PREVAILING

To survive this anti-SLAPP motion, Auralcare must show that their breach-of-contract, trade secret misappropriation, unjust enrichment, and their good faith and fair dealing counterclaims have "minimal merit." *Navellier v. Sletten*, 29 Cal. 4th 82, 95 (2002). In so doing, Auralcare cannot simply rest on the Countercomplaint, but must present evidence that would be admissible at trial. *HMS Capital v. Lawyers Title Co.*, 118 Cal. App. 4th 204, 212 (2004).

#### 1. AURALCARE FAILS TO ESTABLISH A BREACH OF CONTRACT CLAIM

To properly allege a breach of contract, Auralcare must plead (1) the existence of a contract; (2) its performance or excuse for nonperformance under the settlement agreement; (3) Manchester's breach of the contract; and (4) that Manchester's breach caused damages. *Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal. App. 4th 1602, 1614 (2011).

Based on both the counterclaim itself and the papers filed for and against Manchester's anti-SLAPP motion, the Court finds that Auralcare fails to allege and establish minimal merit for a viable breach of contract claim because it fails to establish damages. Specifically, Auralcare centers its damages argument on attorneys' fees, and buttresses this argument with speculative assertions—that the exact amount of damages are either "under investigation" (Auralcare Oppn. 13), and "will be demonstrated during trial" (*Id.* at 2).

Here, Attorney's fees cannot serve as the foundation upon which Auralcare's damage claim rests. Auralcare provides no support for the proposition that attorney's fees can satisfy the damage element in a breach of contract claim. California courts

distinguish between "attorney's fees that are sought as 'an allowance . . . to the prevailing party as an incident to the principal cause of action, and those that are sought as part of the cause of action." *Monster, LLC v. Superior Court*, 12 Cal. App. 5th 1214, 1228 (2017)(citations and internal quotation marks omitted). However, the latter refers to circumstances "where attorney fees are incurred in a prior action, or sought in a proceeding as damages as for example in false imprisonment or malicious prosecution suits or where recoveries sought in an action by an attorney against his client for an agreed or a reasonable fee." *Mabee v. Nurseryland Garden Centers, Inc.*, 88 Cal. App. 3d 420, 425 (1979). But "[n]o similar procedural and evidentiary base is required where 'the attorney fee was not the cause of action but an incident to it.'" *Id.* The attorney's fees that Auralcare seeks are "incident to" its breach of contract cause of action, and are not part of the action itself.

Accordingly, Auralcare has failed to establish probable success on its breach of contract claim.

### 2. REMAINING CLAIMS

Auralcare's remaining claims: breach of the implied covenant of good faith and fair dealing, trade secret misappropriation, and for violations the California UCL all share one common element—damages. *See Britz Fertilizers v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1167 ("Causation resulting in damages is an essential element of a claim for breach of contract as well as a claim for breach of the implied covenant of good faith and fair dealing"); *Sargent Fletcher v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003)("to state a prima facie claim for trade secret misappropriation, plaintiff must demonstrate, *inter alia*, that defendants' actions damage plaintiff"). Moreover, "to have standing to bring a claim under California's UCL, plaintiff must show he or she suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. § 17204.

Given that Auralcare failed to establish damages in its breach of contract claim, it cannot prevail in establishing damages in any of the remaining claims given it extends its failed damages argument to its other claims.

Accordingly, Manchester's anti-SLAPP Motion is **GRANTED**.

### C. MANCHESTER IS ENTITLED TO ATTORNEY'S FEES AND COSTS

As Manchester's anti-SLAPP motion successfully defeats Auralcare's counterclaims, Manchester is entitled to attorney's fees and costs related to the Motion. Cal. Civ. Proc. Code § 425.16(c)(1); *Lafayette Morehouse, Inc. v. Chronicle Pub. Co.*, 39 Cal. App. 4th 1379, 1383 (1995). In its papers, however, Manchester does not specify what this amount is. (MTS 16.) As such, Manchester may submit her total attorney's fees and costs in a noticed motion to the Court no later than **August 16, 2019.**

### V. CONCLUSION

For the foregoing reasons, Manchester's Motion to Strike is **GRANTED**. (ECF No. 118.)

**IT IS SO ORDERED.**

August 7, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**